UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DEANA C. [1]      Case No. 3:18-cv-1845-AC

        Plaintiff,      OPINION AND ORDER

  v.

COMMISSIONER, Social Security
Administration,

        Defendants.

---

ACOSTA, Magistrate Judge:

    Plaintiff Deana C. ("Plaintiff") filed this action under section 205(g) of the Social Security Act (the "Act") as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of Social Security (the "Commissioner") who denied her application for social security disability

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

insurance benefits ("Benefits"). The court finds the ALJ adequately identified the portions of Plaintiff's testimony he found not entirely credible and provided clear and convincing reasons for discounting Plaintiff's testimony regarding her limitations. Accordingly, the Commissioner's final decision is affirmed.[2]

*Procedural Background*

On or about March 3, 2014, Plaintiff filed an application for Benefits alleging an onset date of May 23, 2013. The application was denied initially, on reconsideration, and by S. Pines, the Administrative Law Judge (the "ALJ"), after a hearing. The Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner.

*Factual Background*

Plaintiff is fifty-one years old. She graduated from high school. Her past relevant work experience includes program aide and group home attendant. Plaintiff has not been involved in a successful work attempt since May 23, 2013. Plaintiff alleges disability because of depression and degenerative joint disease and osteoarthritis of the knees. Plaintiff last met the insured status requirements entitling her to Benefits on December 31, 2017.

I. Testimony

In the Function Report completed by Plaintiff on October 27, 2014, Plaintiff reported she lived with her son and had no difficulty managing her personal care. (Tr. of Social Security Administrative R., ECF No. 13 ("Admin. R."), at 209, 211.) She described an average day as follows: "Fix me a bowl of cereal. Do 30 min. of my home PT exercises. Watch TV laying down.

---

[2] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

Make me a sandwich, go to appointments, come home lay down fix me TV/Box dinner. Lay down watch TV." (Admin. R. at 210.)

Plaintiff represented she did not do any housework other than folding laundry while sitting on her bed two to three days a week for fifteen minutes. (Admin. R. at 212.) She retained the ability to drive and went grocery shopping once a twice a week for about thirty-five minutes. (Admin. R. at 211-12.) She socialized or communicated with others regularly and attended physical therapy or doctor's appointments once a week. (Admin. R. at 213.)

Plaintiff stated she was able to sit for an hour and stand for fifteen minutes before she suffered severe knee pain and needed to lay down and elevate her knee. (Admin. R. at 209.) She used a walker or a cane when walking; her knee issues limited her ability to squat, bend, stand, walk, sit, kneel, and climb stairs; and the pain from her knee, or medication to alleviate such pain, resulted in difficulties concentrating and completing tasks. (Admin. R. at 213-15.)

A few months later, Plaintiff represented she had "3-4 days per week that she will only get out of bed for 30 minutes," she uses an "apparatus" to put on her socks, and only bathes on the days she gets out of bed." (Admin. R. at 226.) Plaintiff indicated she was able to sit for two hours, stand for thirty minutes, and walk for about ten minutes before the pain got bad and she had to take a pain pill or rest for thirty minutes. (Admin. R. at 239, 250.) The pain affected her sleep and she was able to shop for only twenty minutes at a time. (Admin. R. at 240-41.) By August 2016, Plaintiff's range of motion was more limited, affecting her walking and resulting in back and hip pain. (Admin. R. at 271.)

At the June 8, 2017 video conference hearing before the ALJ (the "Hearing"), Plaintiff testified she spends her days loading the dishwasher, doing light housework, cooking boxed and

frozen meals or easy meals in the crock pot, caring for the cat, and grocery shopping. (Admin. R. at 65, 67.) She drives a couple times a day to run a variety of errands. (Admin. R. at 63.) She is no longer able to read due to issues with her ability to concentrate. (Admin. R. at 65.)

Plaintiff described the range of motion in her right knee to be "very little" – she is unable to straighten it and it does not bend very far. (Admin. R. at 65.) She cannot sit or stand for very long due to pain in her knee and back and avoids taking pain pills as they make her tired. (Admin. R. at 65-66.) On average, Plaintiff spends two and a half to three hours a day on her feet and but must elevate her feet for twenty minutes to an hour three or four times a day. (Admin. R. at 66-67.) If she sits for extended periods, she becomes stiff and has difficulty getting around. (Admin. R. at 68.) Plaintiff did not think she could perform a job with a sit/stand option because she would need to rest or lay down every two hours. (Admin. R. at 72.)

II. Medical Evidence

Plaintiff's medical record reveals a long history of degenerative joint disease and osteoarthritis primarily affecting her right knee. In March 2013, Plaintiff reported a pain level of nine out of ten which was aggravated by bending, walking, standing, and climbing and descending stairs, and relieved by use of a cane, ice, elevation, and pain medications. (Admin. R. at 398-99, 835.) Plaintiff's primary care provider, Margaret M. Haupt, F.N.P. ("Haupt"), recommended Plaintiff continue to use a cane when possible and ice her knee after work. (Admin. R. at 399.) Haupt increased her Norco prescription. (Admin. R. at 399.)

On May 22, 2013, Plaintiff sought treatment from Haupt for increased pain in her right knee. (Admin. R. at 390.) Plaintiff felt her knee "pop" while at work and was, initially, unable to put any weight on it. (Admin. R. at 390.) On examination, Haupt noted the knee was swollen,

moderately painful with motion, and had reduced range of extension. (Admin. R. at 391.) On June 27, 2013, Mark Cullen, M.D. ("Dr. Cullen") performed arthroscopic surgery to address issues related to degenerative arthritis and a medical meniscus tear in Plaintiff's right knee. (Admin. R. at 326.) While Plaintiff reported she felt a seventy-five percent improvement in the months immediately following the surgery, with only moderate symptoms and overall improvement in her pain, she also indicated she continued to have sharp, aching, and constant pain at levels of three to nine which was relieved to some degree with cortisone injections, and her providers noted she walked with a limp in the latter part of 2013. (Admin. R. at 841, 845, 850, 855.)

In January 2014, Plaintiff reported to Haupt her pain level was moderate to severe, constant, and worsening. (Admin. R. at 380.) Bending and climbing, including stairs, aggravated the knee and Plaintiff was having difficulty with mobility, initiating sleep, joint tenderness, limping, and swelling. (Admin. R. at 380.) Dr. Cullen concluded the arthroscopic surgery was not entirely successful, noting Plaintiff was "severely debilitated by her symptoms," had a range of motion of ten to eighty-five degrees and very limited walking and standing tolerance, continued to have pain and moderate medial and lateral joint line tenderness despite corticosteroid injections, and recommended a total knee arthroplasty. (Admin. R. at 484, 523, 530.) Dr. Cullen performed the surgery (also referred to as a total knee replacement) on June 12, 2014, which improved Plaintiff's pain level, particularly while walking, but did not increase her range of motion to the desired degree. (Admin. R. at 363, 432, 461, 892, 900.)

In early September, 2014, Dr. Cullen noted Plaintiff continued to have limited range of motion in her right knee despite physical therapy, walked with a limp, and suffered achy and constant pain at a level of five out of ten which was aggravated by standing, walking, stairs,

squatting and kneeling, and improved with ice and rest. (Admin. R. at 448, 450.) In the hope of increasing Plaintiff's right knee flexion to at least ninety degrees, Dr. Cullen performed a right knee manipulation on September 11, 2014. (Admin. R. at 452.) Plaintiff reported improvement in her symptoms, pain, "movement" and range of motion after the procedure through the fall of 2014; Haupt observed a "slight limp" with use of a cane in November 2014; and in December 2014, Dr. Cullen noted Plaintiff continued to have persistent knee pain, a range of motion from three to seventy degrees, and significant improvement her gait with physical therapy. (Admin. R. at 362, 747, 798-797, 878.)

In March 2015, Plaintiff told Dr. Cullen her knee was extra stiff after a fall, she had a pain level of six which she described as achy and constant, with sharp stabbing pain when she flexed her knee, and increased pain with walking. (Admin. R. at 789.) Dr. Cullen stated Plaintiff's "overall function is improving" and she was maintaining sixty degrees of knee flexion. (Admin. R. at 789.) A month later, Dr. Cullen noted Plaintiff continued to have persistent knee pain that was slowly improving, recommended Plaintiff continue to work on strength and ambulation, and provided a steroid injection. (Admin. R. at 751.) Haupt reported Plaintiff continued to walk with a limp, used a cane, and had a "moderately reduced" range of motion in her right knee through June 2015. (Admin. R. at 736, 739.) In August 2015, Plaintiff was able to fully extend her knee but was limited to sixty to seventy degrees on flexion, had very little pain with walking, and intermittent "sharp, stabbing" pain at a level of four. (Admin. R. at 874.) In September 2015, James B. Sholar, M.D. ("Dr. Sholar"), treated Plaintiff for chest pains and swelling in her feet and face. (Admin. R. at 1200.) Dr. Sholar observed Plaintiff's extremities exhibited normal range of motion. (Admin. R. at 1201.) Two months later, while examining Plaintiff with regard to pain in

her right leg, Dr. Sholar indicated she had a "limping gait" but no motor or sensory deficits. (Admin. R. at 1189.)

Plaintiff continued to have constant pain at a level of four in May 2016 with pain management, and had developed additional gait problems as a result of flexion contracture in her right knee possibly causing back issues. (Admin. R. at 872-73.) Dr. Cullen observed mild diffuse tenderness with palpation of the right knee, an absence of swelling, a range of motion between twenty to forty with guarding, and normal stability on varus/vulgas stress examination. (Admin. R. at 872.) An x-ray of Plaintiff's right knee revealed an "intact right total knee arthroplasty" with "moderate tibiofemoral and patellofemoral joint degeneration." (Admin. R. at 871.) Dr. Cullen recommended additional physical therapy but, despite obtaining some relief from her symptoms, Plaintiff discontinued the therapy in June 2016. (Admin. R. at 943.) Plaintiff expressed a desire to continue an independent maintenance program at home and her physical therapy provider advised her of the importance of continued stretching and strengthening to prevent further regression of her range of motion. (Admin. R. at 943.) Three emergency room doctors who provided emergency treatment to Plaintiff for extreme sunburn or adnominal pain on separate occasions in May and November 2016, indicated Plaintiff's gait was normal and/or she was "moving all extremities with good strength." (Admin. R. at 1116, 1129, 1153.)

III.  Vocational Evidence

Erin Hunt, M.S.W., L.C.S.W. ("Hunt"), participated in the Hearing and testified as a vocational expert. She characterized the Plaintiff's past work experience to be a combination of program aide and group home attendant with work demands in the medium range. (Admin. R. at 75.) The ALJ asked Hunt if an "individual of the claimant's age and education with that past work,

PAGE 7 - OPINION AND ORDER

and further assuming the person is limited to sedentary work; could stand and walk for a combined total of two hours; could occasionally climb ramps and stairs, could never climb ladders, ropes or scaffolds; could occasionally balance and stop, could never kneel, crouch or crawl, and should avoid concentrated exposure to vibration, pulmonary irritants and hazards," could perform Plaintiff's past relevant work. (Admin. R. at 75-76.) Hunt testified such an individual would be unable to perform Plaintiff's past relevant work but could perform the jobs of table worker, taper, or wafer breaker, all of which were classified as sedentary. (Admin. R. at 76.) When asked if an individual who could sit, stand, and walk for a combined total of six hours a day, but would need to recline for the remainder of the workday, would be employable, Hunt opined such individual "would not be competitively employable on a full-time basis." (Admin. R. at 76-77.) In response to a question posed by Plaintiff's representative, Hunt testified an individual who needed to elevate their leg for one to two hours a day would not be able to perform the tasks required of a table worker, taper, or wafer breaker. (Admin. R. at 77.)

IV.  ALJ Decision

The ALJ found Plaintiff suffered from the severe impairments of degenerative joint disease of the knees, obesity, asthma, depression, and an intellectual disability, and that Plaintiff had not engaged in substantial gainful activity since May 23, 2013. (Admin. R. at 25.) While conceding Plaintiff's impairments significantly limited her ability to perform basic work activities, the ALJ found such impairments did not meet or equal the severity of any listed impairment. (Admin. R. at 25.) As a result of her impairments, the ALJ considered Plaintiff capable of performing sedentary work with the following limitations: "She can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can occasionally balance and stoop, but never kneel,

crouch, or crawl. She should avoid concentrated exposure to vibration, pulmonary irritants, and hazards. She is limited to simple, routine work." (Admin. R. at 28.) In light of these limitations, the ALJ deemed Plaintiff unable to perform her past relevant work of program aide and group home attendant. (Admin. R. at 35.) The ALJ acknowledged the vocational expert's testimony that Plaintiff could perform the jobs of table worker, taper, and wafer breaker. (Admin. R. at 35-36.) Based on Plaintiff's age, education, work experience, and identified limitations and Hunt's testimony, the ALJ found Plaintiff "has not been under a disability within the meaning of the [Act] from May 23, 2013, through the date of this decision." (Admin. R. at 24, 36.)

The ALJ found the impairments Plaintiff suffered could reasonably be expected to result in some symptoms and resulting limitations, but found Plaintiff's testimony regarding the intensity, persistence, and limiting effects of the symptoms to be not entirely consistent with the evidence, medical or otherwise, found in the record. (Admin. R. at 29.) The ALJ noted Plaintiff initially represented she was regularly unable to get out of bed for more than thirty minutes a day, microwaved most of her meals, and washed only a few dishes at a time, and subsequently testified she was independent in activities of daily living and spent her days running errands and doing light household chores. (Admin. R. at 29.) With regard to specific limitations identified by Plaintiff, the ALJ acknowledged Plaintiff claimed her "primary impairment keeping her from work was degenerative joint disease in her knees" which prevented her from straightening, and resulted in a very limited range of motion in, her right knee; caused her to become stiff "really fast" when sitting with subsequent difficulties ambulating; produced pain if she stood or sat for extended periods; and forced her to take more time cleaning her house, go grocery shopping more than once a week,

and cook less elaborate meals. (Admin. R. at 29.) Plaintiff also claimed her pain medication caused fatigue and affected her ability to react when driving. (Admin. R. at 29.)

The ALJ then summarized, in great detail, Plaintiff's treatment notes from March 2013 to November 2016, and concluded the reduced range of motion in right knee with occasional swelling and pain in both knees and a resulting antalgic gait caused by Plaintiff's degenerative joint disease of the knees and comorbid obesity were entirely consistent with his description of Plaintiff's residual functional capacity. (Admin. R. at 29-30.) The ALJ further explained:

> The objective medical evidence in the claimant's file supports the residual functional capacity outlined above. Although the claimant has a long history of degenerative joint disease of the knees in the context of obesity, which cause symptoms that limit some of her functional abilities, physical examinations consistently show she maintained adequate strength and normal sensation and reflexes. Her providers consistently note her gait to be only mildly antalgic and that she is able to ambulate with the use of a cane. The residual functional capacity is also supported by the claimant's own statements regarding her abilities. She had no difficulty managing her personal care. Ex. 4E/3. She prepared meals for herself on a daily basis. Ex. 4E/2. She did her own laundry and dishes. Ex. 10E/3. She drove on a daily basis, and did her own grocery shopping. The residual functional capacity identified above is consistent with objective medical evidence and the claimant's own statements regarding her abilities.

(Admin. R. at 31.)

*Standard of Review*

The Act provides for payment of Benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). The burden of proof to establish a disability rests upon the claimant. Gomez v. Chater, 74 F.3d 967, 970 (9th Cir.), *cert. denied,* 519 U.S. 881 (1996). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a

continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A) (2019).  An individual will be determined to be disabled only if there are physical or mental impairments of such severity that the individual is not only unable to do previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A) (2019).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for Benefits because he or she is disabled.  20 C.F.R. § 404.1520 (2019); *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, Benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, Benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant has performed in the past.  If the

claimant is able to perform work which he or she has performed in the past, a finding of "not disabled" is made and Benefits are denied. 20 C.F.R. §§ 404.1520(e).

If the claimant is unable to do work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995). The claimant is entitled to Benefits only if he or she is not able to perform other work. 20 C.F.R. §§ 404.1520(f).

When an individual seeks Benefits because of disability, judicial review of the Commissioner's decision is guided by the standards set forth in 42 U.S.C. § 405(g) (2019). This court must review the case to determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). It is more than a scintilla, but less than a preponderance, of the evidence. *Id.*; *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. *Gonzalez*, 914 F.2d at 1200. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. *Id.* The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. *Gomez*, 74 F.3d at 970.

*Discussion*

Plaintiff asserts the ALJ erred by improperly discounting Plaintiff's testimony with regard to her pain and resulting limitations. Specifically, Plaintiff claims the ALJ failed to identify the portions of her testimony found not credible or "link[] evidence to *specified* knee-related testimony that she was seeking to undermine." (Pl.'s Opening Br, ECF No. 23 ("Br."), at 7). In support of this argument, Plaintiff relies solely on the following portion of the ALJ's analysis:

> In summary, symptoms from the claimant's degenerative joint disease of the knees with comorbid obesity, including reduced range of motion in the right knee, occasional swelling in the knees, knee pain, and a mildly antalgic gait, support the exertional limitations in the residual functional capacity described in finding five above.

(Br. at 7.) The Commissioner contends the ALJ properly considered the evidence in accordance with the terms of the Act and related regulations, and the decision should be affirmed.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929 (2019). The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make sufficiently specific findings to permit the reviewing court to conclude the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-*

*Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039. "Credibility determinations are the province of the ALJ" and the court may not "second-guess" the ALJ's determination if they have made specific findings that are supported by substantial evidence in the record. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Here, the ALJ found Plaintiff produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and did not identify any evidence to establish Plaintiff was malingering. Consequently, the ALJ was required to offer clear and convincing reasons for rejecting Plaintiff's testimony regarding her limitations. To meet this standard, "[t]he ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – '[g]eneral findings are insufficient.'" *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005), (quoting *Reddick v, Chater*, 157 F.3d 715,722 (9th Cir. 1998)); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (*en banc.*) ("[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain.")

The ALJ expressly found "the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Admin. R. at 29). The Ninth Circuit has expressly held a boilerplate statement such as this, without more, "falls short of meeting the ALJ's responsibility to provide 'a discussion of the evidence' and 'the reason or reasons upon which' his adverse determination is

based." *Treichler v. SSA,* 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting 42 U.S.C. § 405(b)(1)); *Brown-Hunter,* 806 F.3d at 493 (ALJ's finding that limitations identified by claimant were less serious than alleged based on unspecified claimant testimony and a summary of medical evidence insufficient to meet clear and convincing standard). Here, however, the ALJ engaged in additional discussion of the evidence and reasons for discounting Plaintiff's testimony.

The ALJ acknowledged Plaintiff's degenerative joint disease and obesity could limit some of her functional abilities but found she "maintained adequate strength and normal sensation and reflexes." (Admin. R. at 31.) The ALJ then specifically noted Plaintiff's physical examinations consistently showed she retained adequate strength and normal sensation and reflexes, and that her medical providers regularly commented on Plaintiff's ability to ambulate with the use of a cane and observed her gait to be only mildly antalgic. In the summary of medical records, the ALJ included citations to the record where Plaintiff's medical providers represented Plaintiff could ambulate with a cane, walked with a mild limp and no motor or sensory deficit, "had good quadriceps contracture and normal stability on varus and valgus stress exam," and showed good strength. (Admin. R. at 29-30.) Admittedly, the references to the medical evidence in the record supporting the ALJ's discounting of Plaintiff's testimony were contained in the summary of the medical record and not the paragraphs specifically addressing the ALJ's handling of Plaintiff's testimony. However, viewing the entirety of the decision, the ALJ makes clear the portions of Plaintiff's testimony he found not entirely credible and the medical evidence relied on in making such finding.

The ALJ also found Plaintiff's description of her daily activities to be inconsistent with her testimony regarding her functional limitations. An ALJ may use a claimant's daily activities to

reject her subjective symptom testimony on either of two grounds: (1) if the reported activities contradict the claimant's other testimony; or (2) if the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ was justified in discrediting Plaintiff's subjective testimony on both grounds.

"[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch*, 400 F.3d at 681-82. In *Burch*, the ALJ partially rejected the claimant's pain testimony explaining the claimant's daily activities "suggest that she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances and those of her nephew." *Id*. at 681. The court found the explanation constituted specific findings sufficient to support the ALJ's credibility determination. *Id*. at 681-82. Here, the ALJ made similar findings, relying on Plaintiff's testimony she had no difficulty managing her personal care, prepared meals, drove daily, did laundry and dishes, and went grocery shopping. (Admin. R. at 31.)

Additionally, Plaintiff's testimony regarding her physical limitations was inconsistent with her description of her daily activities. At the Hearing, Plaintiff testified she spends her days loading the dishwasher, doing light housework, cooking boxed or frozen meals, or easy meals in the crock pot, caring for the cat, and running a variety of errands (including grocery shopping) in her car a two or three times a day. She also represented she was totally independent in handling her personal care. This undermines her testimony she is regularly unable to function for more than thirty minutes a day, that she must elevate her right knee three to four times a day for twenty minutes to an hour at a time, and that she needs to rest or lay down every two hours.

While the ALJ undoubtedly could have better identified the specific testimony he was discounting, it is clear he rejected Plaintiff's representations she was regularly bedridden for all but thirty minutes a day, limited to preparing meals in the microwave, able to wash only a few dishes at a time, had trouble with ambulation, needed to rest or lay down every two hours, and needed to spend twenty minute to an hour three to four times a day with her leg elevated. The ALJ found Plaintiff generally able to perform sedentary work, which involves sitting with occasional walking, standing, and lifting of up to ten pounds. 20 C.F.R. § 404.1567(a) (2019). This finding is consistent with Plaintiff's daily activities and her medical providers' observations. The ALJ did not err in discounting Plaintiff's testimony and finding her capable of sedentary work with some additional restrictions.

*Conclusion*

The Commissioner's findings on Plaintiff's disabilities, considering the record as a whole, are supported by substantial evidence. The decision of the Commissioner is AFFIRMED.

DATED this 27th day of March, 2020.

    /s/ John V. Acosta
    JOHN V. ACOSTA
    United States Magistrate Judge